UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kathleen O'Connor, and
Julie Tossey,

Plaintiffs,

v.

MEMORANDUM OPINION
AND ORDER
Civil No. 01-846(MJD/SRN)

City of St. Paul;
Timothy K. Fuller, Gary
Olding; Mark Robertson;
Patrick Smith; John Hamilton;
Mayor Norm Coleman; and
Chris Cook,

Defendants.

---

Daniel J. Boivin, Meshbesher & Spence, Ltd., for and on behalf of Plaintiffs.

David H. Johnson, Jim Michels and Ann Walthers, Rice, Michels & Johnson, LLP, for and on behalf of Defendant Patrick Smith.

---

This matter is before the Court upon Defendant Patrick Smith's motion to dismiss for failure to state a claim against him. In response, Plaintiffs have moved to amend their complaint to add factual allegations against Defendant Smith. The Court will thus refer to the Amended Complaint in determining Defendant Smith's motion.

Factual Background

Plaintiffs Kathleen O'Connor and Julie Tossey were fire dispatchers with the City of St. Paul. Tossey was hired in 1990, while O'Connor was hired in 1994. In



FILED DEC 21 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

addition, O'Connor was a "paid on call" firefighter for the City of Eden Prairie, holding the rank of lieutenant. Amended Complaint, ¶ 23.

In 1990, the St. Paul Fire Department ("Department") instituted an Affirmative Action Plan ("AA Plan") aimed at bringing women into fire fighting positions. Id. ¶ 27. The AA Plan also incorporated dispatchers into the International Association of Fire Fighters Local 21 ("Local 21"). Id. ¶ 28. Plaintiffs allege that in 1994, the AA Plan allowed two male dispatchers to move into the Department's Fire Recruit Academy, with their promotional preference, pay, vacation and sick leave intact. Id. ¶ 29.

In May 1999, Plaintiffs applied to become fire fighters with Department. Plaintiffs allege that after they applied for fire fighter positions, the Defendants conspired to prevent Plaintiffs from being hired. Specifically, Plaintiffs allege that Fire Chief Fuller and Assistant Fire Chief Olding, who was also the President of Local 21, advocated the merging of the Fire Communications Center with the Police Communications Center. Id. ¶ 33. Such merger took effect on August 14, 1999. Id. ¶ 34. Once the merger was approved, Fuller and Olding advocated that dispatchers would not retain their promotional rights. Id. ¶ 35. In addition, Fuller and Olding attempted to deny dispatchers their promotional salary. Id. ¶ 36. As a result of the merger, Plaintiffs became employees of the St. Paul Police Department.

Plaintiffs further allege that after they passed the physical test in May 2000, it became clear that Plaintiffs would be placed at the top of the list of new recruits. Id. ¶ 43. Olding, as the President of Local 21, and Defendant Patrick Smith, as the

Secretary of Local 21, conspired to prevent Plaintiffs' hire by putting forth a motion at a union meeting to oppose the granting of seniority of new hirees over any other current employee. Id. ¶ 45. Minutes of the union meeting, created by Smith, reflect the discussion that members believed it unfair that Plaintiffs receive preference over 142 firefighters, and that plans were discussed to fight the issue. Id. ¶ 44. At this meeting, Smith proposed the following motion: "oppose the granting of seniority of new hirees over any current employee." Id. ¶ 45. The motion was passed with a vote of 30 to 1. Id. Plaintiffs allege that the effect of this motion would be to treat Plaintiffs, as well as other dispatchers, differently than previous male dispatchers. Id. ¶ 46. However, Plaintiffs seniority rights remained intact as the policy could only be changed by the City Council. Id. ¶ 47. The AA Plan was discontinued as a result of the actions of Fuller, Olding and Smith. Id. ¶ 49.

Plaintiffs also allege that Smith was an assigned trainer for practice sessions for potential fire fighter recruits, in which the recruits practiced and trained for the entrance test to the Fire Recruit Academy. Id. ¶ 53. In this capacity, Plaintiffs allege that Smith impacted and had influence over the standard applied to the recruits during the test; specifically with regard to whether female recruits were allowed to drag a dummy, rather than carry the dummy. It was Smith's position that all recruits should be required to carry the dummy, even though it was apparent that female recruits had difficulty carrying the dummy. Id. ¶ 54.

Plaintiffs further allege that on or about October 3, 2000, Smith told Tossey's husband that if Tossey and O'Connor voluntarily give up their

promotional rights, things would go a lot better for them. Id. ¶ 56. That same day, Plaintiffs allege they received written notification that they had passed the physical fitness test, and that they were offered positions in the recruit academy. Id. ¶ 57. The written notice also informed them that they must satisfactorily pass all physical fitness performance standards by the end of the academy, yet they were terminated from the academy six weeks prior to the end. Id.

The remaining allegations in the Amended Complaint concern Plaintiffs' experiences during the Academy. None of these allegations mention or implicate Smith, with the exception of a conclusory allegation in paragraph 76 that Smith, along with the other Defendants, intentionally deprived Plaintiffs of their rights to employment as fire fighters with the City of St. Paul.

In their Amended Complaint, Plaintiffs have asserted thirteen causes of action: Sex Discrimination, Disparate Impact, under Title VII and the Minnesota Human Rights Act ("MHRA"); Sex Discrimination, Disparate Treatment, under Title VII and the MHRA; Section § 1983 – deprivation of equal protection and due process; Age Discrimination under the ADEA and the MHRA; § 1985, Conspiracy; Retaliation/Reprisal, under Title VII and the MHRA; Hostile Work Environment, Title VII; Intentional Infliction of Emotional Distress; Aiding and Abetting discrimination under the MHRA; Agency, Vicarious Liability/Respondeat Superior; and Tortious Interference with Contractual Relations.

The Age Discrimination, Retaliation, Hostile Work Environment, Agency and Vicarious Liability claims have not been asserted against Defendant Smith.

Standard

For the purposes of Defendant Smith's Motion to Dismiss, the Court takes all facts alleged in Plaintiffs' Amended Complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). Further, the Court must construe the allegations in the Amended Complaint and reasonable inferences arising from the Amended Complaint favorably to Plaintiffs. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." Id.; see Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court applies those standards in the following discussion.

Amended Complaint

In response to Defendant Smith's moving brief in support of his motion to dismiss, Plaintiffs move to amend their Complaint to add further factual allegations to support the asserted claims against him. The Federal Rules of Civil Procedure 15(a) provide the Court discretion to allow amendment to pleadings, and should exercise such discretion liberally. However, where amendment to the pleadings if futile, the Court will not abuse its discretion in denying the request to amend.

Analysis

In the Amended Complaint, the allegations concerning Smith involve his activities as the union secretary in opposing seniority rights to dispatchers over other fire fighters, and the allegations that he used his influence as a trainer to impact the standard applied to recruits during the entrance physical test.

Defendant Smith argues that even if the Court takes into consideration the allegations in the Amended Complaint, Plaintiffs have still failed to assert claims against him.

1. Count One

In Count One of the Amended Complaint, Plaintiffs allege that the Department's physical ability test has and will continue to have an adverse impact on female recruits. Defendant Smith argues that as Plaintiffs both passed the physical ability test in May 2000, they do not have standing to assert this claim.

The Constitution provides that federal courts have jurisdiction to hear actual cases or controversy. U.S. Const. Art. III, § 2, cl. 1. " To show that an Article III case or controversy exists, the party must show it has suffered some actual or threatened injury that can be traced to the allegedly illegal conduct and that is capable of being redressed." National Federation of the Blind of Missouri v. Cross, 184 F.3d 973, 979 (8th Cir. 1999).

The Court agrees that Plaintiffs do not have standing to assert that the physical fitness entrance test has a disparate impact on females, because both Plaintiffs passed this test. Plaintiffs thus fail to show an injury traced to the physical fitness entrance test. As there is no case or controversy before the Court concerning the alleged disparate impact claim, this Court does not have jurisdiction to hear this particular claim. Count One must be dismissed.

2. Count Two

In Count Two of the Amended Complaint, Plaintiffs assert a claim of sex discrimination pursuant to both Title VII and the MHRA. Specifically, Plaintiffs

allege that because of their sex, they were denied equal opportunity, compensation or benefits, and that they were treated differently with respect to the terms, conditions and privileges of employment, and that the Defendants conspired to practice unlawful discrimination.

Initially, the Court notes that Plaintiffs did not designate in their Amended Complaint whether or not Smith was being sued in his official capacity as Secretary of Local 21, or in his individual capacity. Smith correctly asserts that he cannot be held individually liable under Title VII as an employee. Lenhardt v. Basic Institute of Technology, Inc., 55 F.3d 377, 380 (8th Cir. 1995). However, agents or officers of a labor organization can be sued under Title VII. The definition of labor organization provided in Title VII includes a "labor organization engaged in an industry affecting commerce, and *any agent of such an organization*. . . " 42 U.S.C. § 2000e(d). See also, Mills v. Fox, 421 F. Supp. 519, 523 (E.D.N.Y. 1976). Because Smith can only be sued in his capacity as Secretary to Local 21, it operates as a suit against the Union itself. See, Sauers v. Salt Lake County, 1 F.3d 1122, 1125 (10th Cir. 1993)(suit against county attorney can proceed only in his official capacity, and operates as a suit against the county itself.)

The same is not true for a claim under the Minnesota Human Rights Act ("MHRA"). The definition of a labor organization in the MHRA does not include persons acting as agents of the union. Minn. Stat. § 363.01, Subd. 22.

Accordingly, Count Two to the extent that it asserts a claim against Smith under the MHRA, must be dismissed. [1]

Smith nonetheless argues that Count Two should be dismissed as against him because the allegations do not support a claim. Smith argues that the allegations against Smith, in his official capacity as Secretary of Local 21, do establish a violation of Title VII because a union has the right to oppose any action taken by the City to trample the seniority rights of its members, citing for example Trans World Airlines v. Hardison, 432 U.S. 63, 81 (1977) for the proposition that "absent a discriminatory purpose, the operation of a seniority system cannot be an unlawful employment practice even if the system has some discriminatory consequences." In their Amended Complaint, however, Plaintiffs allege that the Defendants, including Secretary Smith, had a discriminatory purpose when acting to dissolve the promotional rights of dispatchers trying to become fire fighters; that is they were trying to ensure that women would not be hired as fire fighters. Accordingly, the Court finds that Plaintiffs have alleged a viable cause of action against Smith in his capacity as Secretary of Local 21. Marquart v. Lodge 837, Int'l Association of Machinists and Aerospace Workers, 26 F.3d 842, 845-846 (8th Cir. 1994)(discussing union liability under Title VII, and listing cases).

---

[1]Smith may be subject to individual liability under the aiding and abetting clause. Minn. Stat. § 363.03, Subd. 6. As Plaintiffs also allege a claim under this provision in Count Ten of the Amended Complaint, Count Two, as against Smith, should be dismissed as redundant to Count Ten.

3. Counts Three, Four and Five: Sections 1983 and 1985 Claims

Plaintiffs allege that the City of St. Paul deprived them of their constitutional rights to equal protection and due process, and that co-Defendants conspired to deprive them of equal protection and due process in violation of 42 U.S.C. §§ 1985 and 1983.

42 U.S.C § 1983 states:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity . . .

Moreover, "Section 1983 itself creates no rights: rather it provides 'a method for vindicating federal rights elsewhere conferred.'" Kendall v. City of Chesapeake, 174 F.3d 437, 440 (4th Cir.1999) (quoting Albright v. Oliver, 510 U.S. 266, 271 (1994)). Section 1985 prohibits two or more persons from conspiring to deprive another "of the equal protection of the laws, or of equal privileges and immunities under the laws. . ."

Smith argues that as he has been sued in his official capacity as Secretary of Local 21, he is not a proper defendant in a claim brought under Section 1983 as he was not acting under the color of state law. A defendant in a Section 1983 case acts under the color of state law "when he abuses the position given to him by the State." West v. Atkins, 487 U.S. 42, 50 (1988). Generally, a public employee acts under the color of state law while acting in his official capacity, or while exercising his responsibilities pursuant to state law. Id.

A labor organization is generally not a state actor. Messman v. Helmke, 133 F.3d 1042, 1044 (7th Cir. 1998). In Messman, fire fighters brought a Section 1983 claim against the union and the city, alleging that the two entities conspired to deprive them of their First Amendment rights. The court held that in order to determine whether union conduct is state action for purposes of a Section 1983claim, the court must determine whether there is a sufficiently close nexus between the state and the challenged action of the private entity. Id. at 1045. In the Amended Complaint, Plaintiffs do allege that Smith took actions to deprive Plaintiffs the right to keep their promotional benefits as Secretary of Local 21, and that the union worked in concert with the City of St. Paul to ensure the guarantee of the promotional rights was distinguished. Accordingly, for purposes of Smith's motion to dismiss, the Court finds that Plaintiffs have stated a claim against Smith under Section 1983 and 1985.

4. Count Nine

Smith also argues that Plaintiffs have failed to allege sufficient facts with regard to their intentional infliction of emotional distress claim against Smith. The elements of an intentional infliction of emotional distress claim are 1) defendant's conduct causing the distress was extreme and outrageous; 2) the conduct was intentional or reckless; 3) the conduct caused emotional distress; and 4) the distress was severe. Hubbard v. United Press Int'l, Inc.,, 330 N.W.2d 428, 438-39 (Minn. 1983). To qualify as extreme and outrageous, the alleged conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Haagenson v. National Farmers Union Prop. &

Casualty Co., 277 N.W.2d 648, 652 n. 3 (Minn. 1979). For purposes of this motion to dismiss, the Court finds that Plaintiffs have sufficiently plead this claim as well.

5. Count 13

The elements of a cause of action for wrongful interference with contract are: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages. Kjesbo v. Ricks, 517 N.W.2d 585, 588 (Minn.1994) (quoting Furley Sales and Assoc. v. North American Automotive Warehouse, Inc., 325 N.W.2d 20, 25 (Minn.1982)). Plaintiffs allege that Defendants, including Smith, interfered with their employment contracts, without justification. Amended Complaint ¶ 161. Specifically with respect to Smith, Plaintiffs allege that his actions to take away their promotional rights , interfered with their employment. The Court finds these allegations sufficient.

IT IS HEREBY ORDERED THAT Defendant Smith's Motion to Dismiss is GRANTED in part and DENIED in part as follows: Count One is DISMISSED WITH PREJUDICE; Count Two, to the extent it asserts a claim against Smith under the Minnesota Human Rights Act, is DISMISSED WITH PREJUDICE. Plaintiffs' Motion to File an Amended Complaint, in the form attached as Exhibit A hereto, is GRANTED.

Date: 12-21-01

Michael J. Davis
United States District Court