UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Kathleen O' Connor and Julie Tossey,**

**Plaintiffs,**

v.

**City of St. Paul; Timothy K. Fuller; Gary Olding; Patrick Smith; and Chris Cook,**

**Defendants.**

**Civil No. 01-846 (MJD/SRN)**

**ORDER**

---

Daniel John Boivin, Esq. and Sandra K. Kensy, Esq., on behalf of Plaintiffs.

Peter G. Mikhail, Esq., Frank E. Villaume III, Esq., and John H. Guthmann, Esq., on behalf of Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on April 4, 2003, on Plaintiff's Motion to Depose Andrea Minkkinen (Doc. No. 69-2).

This Order addresses that motion.

**I. BACKGROUND.**

The Pretrial Scheduling Order in the present case provided an October 18, 2002 deadline for the completion of discovery. On December 20, 2002, Plaintiffs filed their Motion to Depose Andrea Minkkinen

Pursuant to the rule prohibiting a party's attorney from contacting a represented opposing party without the opposing party's attorney's consent, Plaintiffs and Defendants in the present

APR 2 1 2003
FILED ______
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD ______
DEPUTY CLERK ______

case agreed in May 2002, that Plaintiff's counsel would not contact any employees of the St. Paul Fire Department with a rank of captain or higher. During the summer of 2002, Chris Cook's deposition was taken. During his deposition, Cook mentioned Andrea Minkkinen's name as a St. Paul Police Department employee who might have information concerning allegations of sexual discrimination in the department. On July 30, 2002, Plaintiff's attorney, Sandra Kensy, interviewed Minkkinen. During the course of the interview, Kensy learned that Minkkinen was now a captain in the department, although she had a lower rank at the time the events discussed in the interview actually took place.

On either August 4 or 5, 2002, Defendant's attorney, Frank Villaume, learned that an investigator for Plaintiff had contacted Deputy Chief Hoffman of the St. Paul Police Department at his home, and asked him questions concerning the present lawsuit. In response, Villaume sent Plaintiff's attorneys a letter stating they had breached their agreement and also violated the rule barring ex parte communications with opposing counsel's client. The letter insisted that they tell Villaume every individual ranked captain or higher who had been contacted, and provide him with the notes from the interviews. Villaume received no response to this letter or to a second letter he sent two weeks later, restating his demands. On August 29, 2002, during the deposition of Timothy Fuller, the contact with Hoffman came up again. At that time, Plaintiff's attorney, Daniel Boivin, informed Villaume that the contact had been inadvertent and, "no harm, no foul."

On September 20, 2002, Kensy sent Villaume a letter informing him that she had contacted Minkkinen, and stating that she would need an affidavit from Minkkinen, or to take her deposition, for purposes of opposing Defendants' motion to dismiss. Villaume refused to allow Kensy to contact Minkkinen again, and did not hear from Kensy again until November 25, 2002.

On November 25, Kensy informed Villaume that she intended to use the notes she had obtained through her July 30 interview with Minkkinen in an affidavit opposing the present motion to dismiss.

## II. DISCUSSION

### A. Legal Standard.

"Where, as here, the deadline for the amendment of pleadings has long since expired, the propriety of the Motion for leave to amend 'is most properly considered within the framework of Rule 16(b), Federal Rules of Civil Procedure.'" Luigino's, Inc. v. Pezrow Companies, 178 F.R.D. 523, 525 (D. Minn. 1998) (citations omitted).

> It is true that the Federal Rules are usually liberally construed to permit parties to amend pleadings, add additional parties and to similarly control the pace of litigation. As regards case management orders, however, the Federal Rules set a less forgiving standard. Federal Rule of Civil Procedure 16(b) specifies that such an order "shall not be modified except upon a showing of good cause and by leave of the district judge." Thus, a moving party must first make the requisite showing. Even then the district court retains discretion as to whether to grant the motion. As a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them.

Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001) (citations omitted). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." Bradford, 249 F.3d at 809 (citing Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992)). In addition, "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992); accord

Bradford, 249 F.3d at 809. However, "[i]f that party was not diligent, the inquiry should end." Johnson, 975 F.2d at 609.

**B. The Parties' Positions.**

Plaintiffs state that Minkkinen has information relevant to Defendants' motions to dismiss, and should be deposed. Kensy states that during her earlier interview with Minkkinen, Minkkinen described the atmosphere in the fire station Cook was previously in charge of as sexually discriminatory and hostile. Plaintiffs concede that this information is not directly related to their claims, because the behavior did not occur at the St. Paul Fire Academy, and took place before any of the events in question. Nevertheless, they state Minkkinen's information could help demonstrate motive, intent, and a pattern of practice in Cook's station.

Defendants respond that the local rules require a written request be made before the deadline showing good cause. They state that this motion has been brought so late that it is not properly before the Court. In addition, Defendants assert that Plaintiffs have made no showing of good cause. Defendants explain that Plaintiffs have been aware of Minkkinen throughout discovery. Defendants also state that the information concerning Cook is irrelevant, because Plaintiffs were never employed at Cook' station. Instead, Plaintiff's case concerns their treatment at the St. Paul Fire Academy. Finally, Defendants also state that the allegations against Cook are scurrilous.

**C. The Court's Order.**

The Court denies Plaintiffs' motion. By requesting to depose Minkkinen after the October 18, 2002 close of discovery, Plaintiffs are effectively moving the Court to modify the Pretrial Scheduling Order. Because Plaintiffs also brought this motion after the close of

discovery, they must demonstrate good cause. Plaintiffs, however, have failed to demonstrate good cause. Kensy learned on July 30, 2002, that Minkkinen was a captain, but waited almost two months before informing Defendants' counsel that she had, albeit inadvertently, violated their agreement. The only explanation offered for the delay was that Minkkinen's being a captain did not register with Kensy, because she was asking her about events that occurred before she had become a captain. Kensy explained that on September 20, 2002, when Defendants refused to allow her to meet with Minkkinen again, Plaintiffs were left with the problem of having to depose Minkkinen, rather than having her prepare an affidavit, but already having exhausted their deposition limit. But rather than seeking leave of the Court at that time to take an additional deposition, Plaintiffs waited three more months before filing the present motion. The only explanation given for this second delay was that Plaintiffs had already brought previous discovery motions and did not want to burden the Court.

This behavior fails to satisfy Rule 16's "good cause" standard. If Plaintiffs' attorneys had informed Defendants' attorneys in a timely manner that they inadvertently interviewed a captain, discovery would not yet have closed at the moment they realized they needed to take an additional deposition. Further, if Plaintiffs' attorneys had sought leave of the Court to depose Minnkinen as soon as Defendants' attorneys refused to allow them to interview Minnkinen, their motion also would have been timely. Instead, Plaintiffs' attorneys waited an additional three months.

The Court finds peculiar Plaintiffs' attorney's explanation that she did not wish to burden the Court with additional motions. One of the main purposes of this Court is to resolve discovery disputes and ensure that cases proceed to the trial court in an organized fashion. The

Court recognizes that by denying Plaintiffs' motion, it is forcing Plaintiffs to call a witness at trial who has not previously been deposed. Nevertheless, Defendants aptly note that they would like the opportunity to reopen discovery and depose additional individuals as well. But because the discovery deadline passed six months ago, Defendants state both parties take the risk of calling witnesses they have not yet deposed.

**THEREFORE, IT IS HEREBY ORDERED that:**

Plaintiff's Motion to Depose Andrea Minkkinen (Doc. No. 69-2) is **DENIED**.

Dated: April 21, 2003

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge